AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

APR 1 8 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Motorola Cricket Cellular Phone, Model XT1921-2,<br>SKU No. DMTK4101, IMEI 352168102281762 | )<br>)<br>)<br>)<br>)<br>) |

Case No.

# 19MJ1598

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1324 | Bringing in, Harboring Illegal Aliens |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

U.S. Customs and Border Patrol Agent Carlo E. Nazareno
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4-18-19__

_____
*Judge's signature*

City and state: __San Diego, CA__

Honorable Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

## *Item to be Searched*

The item to be searched is described as follows:

One Black Motorola Cricket Cellular Phone,

Model XT1921-2

SKU No. DMTK4101

IMEI 352168102281762

(the "**Target Telephone**")

The **Target Telephone** is currently in the possession of the Department of Homeland Security, Customs and Border Protection, 9495 Customhouse Plaza, San Diego, California 92154 (Seized Property Vault).

*Affidavit in Support of Search Warrant*                                                      1

1

## Attachment B

2

### *Items to be Seized*

3        The following evidence to be searched for and seized pertains to violations of Title

4   8, United States Code, Section 1324 by Vanessa Martinez-Ledezma on or between

5   November 26, 2018 and February 24, 2019:

6        1.      Communications, records, and/or data, including but not limited to emails, text

7   messages, WhatsApp or Facebook messages, photographs, audio files, videos, or location

8   data:

9            a.      tending to indicate efforts to smuggle undocumented aliens from

10  Mexico into the United states or smuggle undocumented aliens further into the interior of

11  the United States;

12           b.      tending to identify other facilities, storage devices, or information such

13  as email addresses, IP addresses, and phone numbers that may contain electronic evidence,

14  evidencing efforts to smuggle undocumented aliens from Mexico into the United States or

15  smuggle undocumented aliens further into the interior of the United States;

16           c.      tending to identify co-conspirators, criminal associates, or others

17  involved in smuggling undocumented aliens from Mexico into the United States or

18  smuggling undocumented aliens further into the interior of the United States;

19           d.      tending to identify travel to or presence at locations involved in

20  smuggling undocumented aliens from Mexico to the United States or smuggling

21  undocumented aliens further into the interior of the United States, such as stash houses, load

22  houses, or delivery points;

23           e.      tending to identify the user of, or persons with control over or access to,

24  the **Target Telephone**; or

25           f.      tending to place in context, identify the creator or recipient of, or

26  establish the time of creation or receipt of communications, records, or data above.

27

28

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Carlo E. Nazareno, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

### INTRODUCTION

1.      I make this affidavit in support of an application for a warrant to search the following electronic device (the "**Target Telephone**"), as further described in Attachment A, and seize evidence of violations of Federal law, namely 8 U.S.C. § 1324, as further described in Attachment B:

> One Black Motorola Cricket Cellular Phone
>
> Model XT1921-2
>
> SKU No. DMTK4101
>
> IMEI 352168102281762

This search supports an investigation and prosecution of Vanessa MARTINEZ-Ledezma for the crime mentioned above.  A factual explanation supporting probable cause follows.

2.      Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP") seized the **Target Telephone** from MARTINEZ on the evening of February 23, 2019, when she was arrested at the San Ysidro, California, Port of Entry for alien smuggling, in violation of Section 1324. The **Target Telephone** is currently in the possession of CBP and is being maintained in the evidence vault at 9495 Customhouse Plaza, San Diego, California 92154.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Telephone** will produce evidence of the aforementioned crime, as more particularly described in Attachment B.

4.      The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, it does not set forth every fact known by me or others regarding this investigation, but only

1  contains those facts believed to be necessary to establish probable cause. Dates, times and
2  amounts are approximations unless otherwise noted.

3  **TRAINING AND EXPERIENCE**

4       5.       I am a CBP Officer, within the Department of Homeland Security. I have been
5  a CBP Officer since June 18, 2007, having completed the CBP Officer academy at the
6  Federal Law Enforcement Training Center in Glynco, Georgia. As a result of my training
7  and experience as a CBP Officer, I am familiar with federal criminal and immigration laws.
8  My primary duties have been the enforcement of federal immigration and customs laws. As
9  part of this training, I attended criminal investigation training that included course studies
10 in, among other things, criminal law, constitutional law, search and seizures, and courtroom
11 procedure.

12      6.       As a CBP Officer, I am a Federal Law Enforcement Officer within the meaning
13 of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent
14 engaged in the enforcement of the criminal laws of the United States, and thereby authorized
15 to request issuance of federal search and seizure warrants.  As an Officer with CBP, my
16 responsibilities include the investigation of possible violations of Immigration and
17 Nationality laws (Title 8, United States Code), including alien smuggling in violation of
18 Title 8, United States Code, Section 1324, and related offenses.

19      7.       My current assignment includes investigations related to unlawful aliens and
20 alien smuggling.  In the course of my duties, I have worked as the case agent, directing
21 specific alien smuggling and illegal entry investigations. I also have worked as an officer at
22 the San Ysidro, Otay Mesa, and Tecate Ports of Entry.

23      8.       During my assignments, I have interviewed defendants and witnesses relative
24 to their illegal entry and alien smuggling.  Through my observations and these interviews,
25 I have gained a working knowledge of, and insight into, the normal operational habits of
26 unlawful aliens and alien smugglers, with particular emphasis on those who attempt to
27 illegally enter or smuggle unlawful aliens into the United States from Mexico.

28

9.    Through the course of my training, investigations, work experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals, and they do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. As a part of the San Ysidro Criminal Enforcement Unit, I have seen numerous telephones being used by load drivers to communicate with smugglers. Typically, load drivers transporting aliens within the United States are in telephonic contact with co-conspirators immediately prior to and following the entry of unlawful aliens into a load vehicle, at which time they receive instructions on where and when to pick up the unlawful aliens and where to deliver them.

10.   Based on my training, work experience, and conversations with other law enforcement personnel, I am also aware that:

a.    Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.    Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the aliens while they are in transit.

c.    Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the aliens will arrive at predetermined locations.

d.    Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of the aliens.

e.    Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.    Alien smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport the aliens.

g.    Alien smugglers will often use cellular phones and smart devices to guide illegal aliens who are crossing into the United States, providing them instructions as

to where to go and what to do during a smuggling event.  This is often done from over watch positions on high ground in Mexico or at the border fence.  This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution.

        h.     Conspiracies involving alien smuggling often generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators.

     11.    Based upon my training and experience as a CBP Agent, and consultations with law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.  Specifically, based upon my training and education, I have learned that searches of cellular/mobile telephones associated with smuggling investigations yield evidence:

        a.     evidencing efforts to smuggle undocumented aliens from Mexico into the United states or smuggle undocumented aliens further into the interior of the United States;

        b.     tending to identify other facilities, storage devices, or information such as email addresses, IP addresses, and phone numbers that may contain electronic evidence, evidencing efforts to smuggle undocumented aliens from Mexico into the United States or smuggle undocumented aliens further into the interior of the United States;

        c.     tending to identify co-conspirators, criminal associates, or others involved in smuggling undocumented aliens from Mexico into the United States or smuggling undocumented aliens further into the interior of the United States;

1          d.      tending to identify travel to or presence at locations involved in
2 smuggling undocumented aliens from Mexico to the United States or smuggling
3 undocumented aliens further into the interior of the United States, such as stash houses, load
4 houses, or delivery points;

5          e.      tending to identify the user of, or persons with control over or access to,
6 the **Target Telephone**; and/or

7          f.      tending to place in context, identify the creator or recipient of, or
8 establish the time of creation or receipt of communications, records, or data above.

9      12.      Subscriber Identity Module (SIM) Cards, also known as subscriber identity
10 modules, are smart cards that store data for cellular telephone subscribers. Such data
11 includes user identity, location and phone number, network authorization data, personal
12 security keys, contact lists and stored text messages. Much of the evidence generated by a
13 smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been
14 utilized in connection with that telephone.

15                **FACTS IN SUPPORT OF PROBABLE CAUSE**

16      13.      According to a report prepared by CBP Officer Pittman, on February 23, 2019,
17 Officer Pittman was patrolling the pre-primary inspection area of the San Ysidro, California,
18 Port of Entry with a K-9 Unit. At about 9:30 p.m., the K-9 Unit alerted to the interior wall
19 of a U-Haul truck with Arizona license plates AD28367, which had driven into one of the
20 entry lanes. Officer Pittman approached the U-Haul truck and saw that MARTINEZ was
21 the driver and only visible passenger. Officer Pittman asked MARTINEZ where she was
22 going, and MARTINEZ said she was going to San Diego. Officer Pittman asked
23 MARTINEZ for the keys to the U-Haul truck and contacted other CBP Officers to conduct
24 a more intensive inspection of the vehicle.

25      14.      According to the report of CBP Officer Atienza, Officer Atienza responded to
26 Officer Pittman's request for assistance. When Officer Atienza walked over to the U-Haul
27 truck, MARTINEZ said that she had rented the U-Haul truck the day before, had spent the
28 night in Tijuana, and was on her way home to San Diego. Officer Atienza asked

*Affidavit in Support of Search Warrant*      5

1  MARTINEZ if she was bringing anything into the United States from Mexico, and she said
2  she was not. At that point, Officer Atienza placed MARTINEZ in handcuffs and escorted
3  her to the security office at the Port of Entry. The U-Haul truck was taken to the secondary
4  inspection area.

5      15.  According to the report of CBP Officer Calvillo, at about 9:40 p.m., the San
6  Ysidro CBP Criminal Enforcement Unit received a call from the secondary inspection area
7  about possible efforts to smuggle aliens in a hidden compartment in the U-Haul truck.
8  Officer Calvillo walked over to the secondary inspection area and looked at the U-Haul
9  truck; he first saw that the cargo area was empty, except for a dolly. Officer Calvillo then
10 looked further in the cargo area and saw a modification to the front cargo area, commonly
11 known as the "Mom's Attic." This area had new covers and screws, holding up a non-
12 factory wall over the space, as depicted in the picture below:



25 Officer Calvillo also smelled fresh caulking in the area of the "Mom's Attic."

26     16.  Officer Calvillo used a crowbar to remove the screws and caulking that were
27 holding up the wall, and saw five male individuals hidden in the compartment behind it.
28 CBP Officers helped the five individuals out of the compartment. According to the report

1  of CBP Officer Valdes, each of the five individuals said that he was a citizen and national
2  of Mexico who did not have permission to enter the United States and was paying money
3  to be smuggled into the country. One of these individuals was a minor.

4      17.    MARTINEZ was arrested and charged with violating 8 U.S.C. § 1324. The
5  **Target Telephone** was seized during the arrest and booked into evidence. I do not know if
6  the **Target Telephone** was seized from MARTINEZ or found in the H-Haul truck, but I do
7  note that MARTINEZ gave permission to have her phone downloaded during her post-arrest
8  meeting with CBP Officers. And as noted, MARTINEZ was the driver and only visible
9  passenger of the U-Haul truck at the time of her apprehension.

10     18.    After being placed under arrest, MARTINEZ received her *Miranda* rights,
11 which she invoked.

12     19.    Given the facts surrounding MARTINEZ's arrest, and based upon my
13 experience and training, and consultation with other law enforcement officers experienced
14 in alien smuggling investigations, I submit that there is probable cause to believe
15 information relevant to the alien smuggling activities of MARTINEZ, such as telephone
16 numbers, made and received calls, contact names, electronic mail (e-mail) addresses,
17 appointment dates, messages, pictures and other digital information, will be found in the
18 **Target Telephone**.

19     20.    Finally, alien smuggling conspiracies require detailed and intricate planning to
20 successfully evade detection by law enforcement.   In my professional training and
21 experience, this requires planning and coordination in the days and weeks and often months
22 prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest
23 and will continue to attempt to communicate with the subject after the arrest to determine
24 the whereabouts of their valuable cargo. Given those facts, I respectfully request permission
25 to search **Target Telephone** for data beginning November 26, 2018, and including up to
26 and including February 24, 2019, which is the day following the day of arrest.

27

28

1

## **METHODOLOGY**

2      21.    It is not possible to determine, merely by knowing the cellular telephones'
3 make, model and serial number, the nature and types of services to which the devices are
4 subscribed and the nature of the data stored on the devices. Cellular devices today can be
5 simple cellular telephones and text message devices, can include cameras, can serve as
6 personal digital assistants and have functions such as calendars and full address books and
7 can be mini-computers allowing for electronic mail services, web services and rudimentary
8 word processing. An increasing number of cellular service providers now allow for their
9 subscribers to access their devices over the internet and remotely destroy all of the data
10 contained on the devices. For that reason, the devices may only be powered in a secure
11 environment or, if possible, started in "flight mode" which disables access to the network.
12 Unlike typical computers, many cellular telephones do not have hard drives or hard drive
13 equivalents and store information in volatile memory within the devices or in memory cards
14 inserted into the devices. Current technology provides some solutions for acquiring some
15 of the data stored in some cellular telephone models using forensic hardware and software.
16 Even if some of the stored information on the devices may be acquired forensically, not all
17 of the data subject to seizure may be so acquired. For devices that are not subject to forensic
18 data acquisition or that have potentially relevant data stored that is not subject to such
19 acquisition, the examiner must inspect the device manually and record the process and the
20 results using digital photography. This process is time and labor intensive and may take
21 weeks or longer.

22      22.    Following the issuance of this warrant, I will collect the **Target Telephone**
23 and subject them it to analysis. All forensic analysis of the data contained within the
24 telephone and its memory card will employ search protocols directed exclusively to the
25 identification and extraction of data within the scope of this warrant.

26      23.    Based on the foregoing, identifying and extracting data subject to seizure
27 pursuant to these warrants may require a range of data analysis techniques, including
28 manual review, and, consequently, may take weeks or months. The personnel conducting

*Affidavit in Support of Search Warrant*      8

1  the identification and extraction of data will complete the analysis within 90 days, absent
2  further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

4      24.   At the time that MARTINEZ was taken into custody, the **Target Telephone**
5  was forensically downloaded. (As noted, MARTINEZ had given permission to have her
6  phone downloaded.) I have not relied on any information obtained from that download of
7  the **Target Telephone** in this warrant application.

### CONCLUSION

9      25.   Based on all of the facts and circumstances described above, I believe probable
10 cause exists to conclude that MARTINEZ used the **Target Telephone** to facilitate the
11 offense of alien smuggling and to communicate with co-conspirators. The **Target**
12 **Telephone** was likely used to facilitate the offense by transmitting and storing data, which
13 constitutes evidence of violations of Title 8, United States Code, Section 1324.

14     26.   Because the **Target Telephone** was promptly seized following MARTINEZ's
15 arrest at the San Ysidro Port of Entry, there is probable cause to believe that evidence of the
16 alien smuggling offense continues to exist on the **Target Telephone**.  As stated above, I
17 believe that the date range for this search is from November 26, 2018, up to and including
18 February 24, 2019.

19
20
21
22
23
24
25
26 / / /
27 / / /
28 / / /

*Affidavit in Support of Search Warrant*                    9

1    27.    WHEREFORE, I request that the court issue a warrant authorizing Customs
2  and Border Protection Officers and/or other federal and state law enforcement officers
3  specially trained in digital evidence recovery, to search the **Target Telephone**, as described
4  in Attachment A, and seize the items listed in Attachment B, using the methodology
5  described above.

6    I swear the foregoing is true and correct to the best of my knowledge and belief.

7
8    _____
9    CARLO E. NAZARENO
     Customs and Border Protection Officer
10    Department of Homeland Security

11  Subscribed and sworn to before me on
12  this _____ day of April, 2019.

13
14
15  THE HON. NITA L. STROMES
     United States Magistrate Judge
16
17
18
19
20
21
22
23
24
25
26
27
28

*Affidavit in Support of Search Warrant*                    10